**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. ________________

PREMIER ATLANTA LLC,

Plaintiff,

v.

RMG AUSTELL HOLDINGS, LLC
RMG AUSTELL MANAGER, LLC
RMG PREMIER, LLC
RMG 300 RIVERSIDE, LLC
RUME CAPITAL INCOME & GROWTH FUND I, LP
RUME CIGF I GP, LLC
RUME PROPERTY MANAGEMENT, LLC
RUME HOLDINGS, LLC
MIR JAN LLC
MONDRY LLC
M GROUP LLC
JOSH MONDRY
MITCHELL MONDRY
IRA MONDRY
CARL SCHIRTZINGER
DAVID NATHAN REICHARD

Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND FOR OTHER RELIEF AND DEMAND FOR JURY TRIAL**

---

Plaintiff Premier Atlanta LLC, a Colorado limited liability company ("Premier Atlanta") through counsel, Robinson Waters & O'Dorisio, P.C., respectfully submits this Complaint and Demand for Jury Trial against Defendants RMG Austell Holdings, LLC, a Delaware limited liability company, RMG Austell Manager, LLC, an Illinois limited liability company, RMG Premier, LLC, a Delaware limited liability company, RMG 300 Riverside, LLC, a Delaware limited liability company, RUME Capital Income & Growth Fund I, LP, a Delaware limited partnership, RUME CIGF I GP, LLC, a Delaware limited liability company, RUME Property Management, LLC, an Illinois limited liability company, Rume Holdings LLC, an Illinois limited liability company, MIR JAN LLC, a Michigan limited liability company, Mondry, LLC, a Michigan limited liability company, M Group LLC, a Michigan limited liability company, Josh Mondry, an individual, Mitchell Mondry, an individual, Ira Mondry, an individual, Carl Schirtzinger, an individual, and David Nathan Reichard, an individual (collectively "Defendants" and each individually a "Defendant"), and states as follows:

**NATURE OF THE ACTION**

1. This is a securities fraud action in which Plaintiff Premier Atlanta seeks to hold Defendants' liable for securities fraud and related misconduct.

**THE PARTIES**

2. Plaintiff Premier Atlanta is a Colorado limited liability company formed on February 27, 2022 with its principal place of business in Aspen, Colorado.

3. Premier Atlanta is an Investor Member of Defendant RMG Austell Holdings, LLC.

4. Defendant RMG Austell Holdings, LLC ("RMG Austell Holdings") is a Delaware limited liability company formed on February 28, 2022 with its principal place of business in West Chicago, Illinois.

5. RMG Austell Holdings is the issuer of the equity interests (membership interests) held by Plaintiff Premier Atlanta.

6. The Manager of RMG Austell Holdings is Defendant RMG Austell Manager LLC.

7. Defendant RMG Austell Manager, LLC ("RMG Austell Manager") is an Illinois limited liability company formed on March 2, 2022 with its principal place of business in West Chicago, Illinois.

8. RMG Austell Manager is both the Manager and the Sponsor Member of RMG Austell Holdings.

9. The Managers of RMG Austell Manager are Defendants RUME CIGF I LP and Ira Mondry.

10. Defendant RMG Premier, LLC ("Premier Property Owner") is a Delaware limited liability company formed on January 4, 2022 with its principal place of business in West Chicago, Illinois.

11. Premier Property Owner is a wholly-owned subsidiary of RMG Austell Holdings.

12. Defendant Carl Schirtzinger is a manager of Premier Property Owner.

13. Defendant RMG 300 Riverside, LLC ("Riverside Property Owner") is a Delaware limited liability company formed on January 4, 2022 with its principal place of business in West Chicago, Illinois.

14. Riverside Property Owner is a wholly-owned subsidiary of RMG Austell Holdings.

15. Defendant Carl Schirtzinger is a manager of Riverside Property Owner.

16. Defendant RUME Capital Income & Growth Fund I, LP ("RUME CIGF I LP") is a Delaware limited liability company formed on November 5, 2020 with its principal place of business in West Chicago, Illinois.

17. RUME CIGF I LP is an Investor Member of RMG Austell Holdings and one of the Managers of RMG Austell Manager.

18. Defendant RUME CIGF I GP, LLC ("RUME CIGF I GP") is a Delaware limited liability company formed on November 4, 2020 with its principal place of business in West Chicago, Illinois.

19. RUME CIGF I GP is the Manager/General Partner of RUME CIGF I LP.

20. Since at least October 15, 2021 Defendants Carl Schirtzinger and Nate Reichard have been managers or members having the authority of a manager of RUME CIGF I GP.

21. Defendant RUME Property Management ("Rume Property Management") is an Illinois limited liability company formed on October 3, 2019 with its principal place of business in West Chicago, Illinois.

22. Rume Property Management is the property manager under the RMG Austell Holdings Operating Agreement.

23. Defendant Rume Holdings LLC ("Rume Holdings") is an Illinois limited liability company formed on June 3, 2019 with its principal place of business in West Chicago, Illinois.

24. Rume Holdings is the manager of RUME Property Management.

25. Since at least May 26, 2021, Defendants Carl Schirtzinger and Nate Reichard have been managers or members having the authority of a manager of RUME Holdings.

26. Defendant MIR JAN LLC ("MIR JAN") is a Michigan limited liability company formed on January 24, 2013 with its principal place of business in Birmingham, Michigan.

27. MIR JAN is an Investor Member of RMG Austell Holdings.

28. Since at least March 13, 2021, Defendant Ira Mondry has been a manager or other Authorized Person of MIR JAN.

29. Ira Mondry also is an owner of MIR JAN.

30. Defendant Mondry, LLC, previously known as M Group Holding LLC ("Mondry, LLC"), is a Michigan limited liability company formed on December 4, 2002 with its principal place of business in Birmingham, Michigan.

31. Mondry, LLC is an Investor Member of RMG Austell Holdings and is part of the "Mondry Directing Party" under the RMG Austell Holdings Operating Agreement.

32. Since at least March 13, 2021, Defendant Mitch Mondry has been a manager or other Authorized Person of Mondry, LLC.

33. Defendants Mitch Mondry and Josh Mondry are owners of Mondry, LLC.

34. Defendant M Group, previously known as M Group Holding LLC ("M Group"), is a Michigan limited liability company formed on December 17, 2008 with its principal place of business in Birmingham, Michigan.

35. M Group is part of the "Mondry Directing Party" under the RMG Austell Holdings Operating Agreement.

36. Since at least March 13, 2021, Defendant Mitch Mondry has been a manager or other Authorized Person of M Group.

37. Defendant Josh Mondry ("Josh Mondry") is an individual who owns property in Aspen, Colorado.

38. Josh Mondry is an owner of Mondry, LLC.

39. Josh Mondry contacted, pitched, solicitated, and negotiated with Premier Atlanta, on behalf of RMG Austell Holdings, for Premier Atlanta's equity investment in RMG Austell.

40. Defendant Mitchell (Mitch) Mondry ("Mitch Mondry") is an individual with a business address of 370 E. Maple, Suite 200, Birmingham, Michigan.

41. Since at least March 13, 2021, Mitch Mondry has been a manager or other Authorized Person of Mondry, LLC.

42. Mitch Mondry is an owner of Mondry, LLC.

43. Since at least March 13, 2021, Defendant Mitch Mondry has been a Manager or other Authorized Person of M Group.

44. Mitch Mondry is a personal guarantor of the existing project debt.

45. Defendant Ira Mondry ("Ira Mondry") is an individual with a business address of 370 E. Maple, Suite 200, Birmingham, Michigan.

46. Ira Mondry is one of the managers of RMG Austell Manager.

47. Since at least March 13, 2021, Ira Mondry has been a manager or other Authorized Person of MIR JAN.

48. Ira Mondry also is an owner of MIR JAN.

49. Ira Mondry is a personal guarantor of the existing project debt.

50. Defendant Carl Schirtzinger ("Carl Schirtzinger") is an individual with a business address of 1525 Kautz Road #100, West Chicago, Illinois

51. Carl Schirtzinger is a Manager of each of Premier Property Owner, Riverside Property Owner, RUME CIGF I GP, and RUME Holdings.

52. Carl Schirtzinger is a personal guarantor of the existing project debt.

53. Defendant David Nathan (Nate) Reichard ("Nate Reichard") is an individual with a business address of 1525 Kautz Road #100, West Chicago, Illinois.

54. Nate Reichard is a manager of each of RUME CIGF I GP and RUME Holdings.

55. Nate Reichard is a personal guarantor of the existing project debt.

56. Defendants Josh Mondry, Mitchell Mondry, Ira Mondry, Carl Schirtzinger, and Nate Reichard are sometimes referred to herein collectively as the "Officer and Manager Defendants" and each individually as an "Officer and Manager Defendant."

## JURISDICTION AND VENUE

57. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

58. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

59. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Many of the acts charged herein, including the dissemination of materially false and misleading information, and materially misleading omissions, occurred in substantial part in this District.

60. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail.

## BACKGROUND

61. The business model of Defendant RMG Austell Holdings, as presented to Plaintiff Premier Atlanta, was to acquire apartment complexes and renovate the properties (the "Project").

62. Defendant Josh Mondry sought funds for the Project by contacting Mr. Mark Friedland, who had prior dealings with Josh Mondry.

63. Based on Josh Mondry's express assurances that the Project was supported by comprehensive investigation and due diligence regarding the appropriateness of the acquisition and redevelopment of the Properties by RMG Austell Holdings, Mr. Friedland agreed to form an LLC to provide capital to RMG Austell Holdings.

64. The Project's business model required that RMG Austell Holdings and its subsidiaries be able to quickly evict any tenants (whether through lease terminations or legal evictions) in order to renovate the properties.

65. Under this business model, the properties would be positioned for higher returns through new or modified leases following completion of the renovations.

66. This business model (hereinafter the "Project Business Model") was to be funded by a mix of equity and debt.

67. All of the Defendants played a role in the development and implementation of the RMG Austell Business Model.

68. Initially, Defendants identified two properties in Austell, Georgia.

69. The first property is an apartment complex located at 7200 Premier Lane, Austell, Georgia 30168 and known as Premier Apartments (the "Premier Property").

70. The second property is an apartment complex located at 300 Riverside Parkway, Austell, Georgia 30168 and known as 300 Riverside (the "Riverside Property").

71. Each of these properties is individually identified as a "Property," and collectively identified as the "Properties".

72. Defendants each participated in the adoption of a parent-subsidiary legal structure for this project.

73. RMG Austell Holdings was formed as the top-level holding company with the purpose of raising equity capital.

74. Two additional entities, Premier Property Owner and Riverside Property Owner, were set up as wholly-owned subsidiaries of RMG Austell Holdings.

75. Premier Property Owner and Riverside Property Owner agreed to acquire, improve, manage, own and operate the identified Properties, including by obtaining project debt financing secured by the Properties.

76. Each of RMG Austell Holdings, Premier Property Owner, and Riverside Property Owner was organized as a special purpose entity.

77. In early 2022, RMG Austell Holdings, directly and through the other Defendants, solicited equity investment from Premier Atlanta based on the personal relationship of Josh Mondry with Mark Friedland.

78. Mr. Friedland is the manager of ASW South LLC, a Colorado limited liability company, which is the manager of Premier Atlanta.

79. Relying on Josh Mondry's assurances of diligence, Premier Atlanta made an equity investment in RMG Austell Holdings in cash in the amount of $21,525,000.

80. These funds were transferred by Premier Atlanta to RMG Austell Holdings on March 7, 2022.

81. The investment closing occurred effective March 8, 2022.

82. There are three principal investment agreements.

83. The Operating Agreement of RMG Austell Holdings is dated March 8, 2022 (the "RMG Austell Holdings Operating Agreement").

84. The RMG Austell Holdings Operating Agreement is signed by (i) RMG Austell Manager, in its capacity as both the Manager and the Sponsoring Member, (ii) MIR JAN; (iii) Mondry, LLC, and (iv) RUME CIGF I LP; and (v) Premier Atlanta.

85. The Acquisition and Asset Management Fee Agreement is dated March 8, 2022 (the "Fee Agreement").

86. Under the Fee Agreement, RMG Austell Manager promised RMG Austell Holdings and its members, including Premier Atlanta, that it would "furnish[] consultation and advice to the Property Owners and the acquisition of the Properties" and that it would "identify[] the Properties as appropriate for acquisition and negotiating the terms of its acquisition."

87. The Fee Agreement is an agreement between Defendants RMG Austell Holdings and RMG Austell Manager, in its capacity as the Sponsor Member.

88. The Fee Agreement is referenced in Section 4.12(a) of the RMG Austell Holdings Operating Agreement.

89. The Amended and Restated Side Letter Agreement/RMG Austell Holdings, LLC, is dated July 17, 2023 (the "Amended Side Letter").

90. The Amended Side Letter was entered into by Plaintiff Premier Atlanta with Defendants RMG Austell Manager, M Group, MIR JAN, and RUME CIGF I GP.

91. No private placement memorandum or other offering or disclosure document was prepared by Defendants in connection with the solicitation of Premier Atlanta's investment.

92. Premier Atlanta made its equity investment in RMG Austell Holdings with an expectation of profits from the efforts of Defendants.

93. The March 8, 2022 investment closing coincided with the closing of the acquisition of the Properties and the incurrence of the initial project debt.

94. The Premier Property was acquired by Premier Property Owner, a wholly-owned subsidiary of RMG Austell Holdings, on March 8, 2022 for $38,350,000.

95. The Premier Property is comprised of two separate tax parcels: Parcel ID 18051000040 and Parcel ID 18051000530.

96. The Riverside Property was acquired by Riverside Property Owner, a wholly-owned subsidiary of RMG Austell Holdings, on March 8, 2022 for $33,650,000.

97. The Riverside Property is comprised of a single tax parcel: Parcel ID 18059200060.

98. The Defendants arranged for project debt through ReadyCap Commercial, LLC, a Delaware limited liability company ("ReadyCap Commercial").

99. ReadyCap Commercial funded a $65,670,000 loan on March 8, 2022 (the "2022 Loan").

100. Premier Property Owner and Riverside Property Owner were co-borrowers on the 2022 Loan, which was secured by both Properties.

101. The 2022 Loan had a maturity date of April 10, 2025, with certain extension rights to April 10, 2026 and subsequently to April 10, 2027 as set forth in the loan documents.

102. The 2022 Loan and associated loan documents were subsequently assigned by ReadyCap Commercial to ReadyCap Warehouse Financing, LLC, a Delaware limited liability company, effective March 8, 2022.

103. The 2022 Loan was then assigned by ReadyCap Warehouse Financing, LLC to Ready Capital Mortgagor Depositor VII, LLC, a Delaware limited liability company, effective June 30, 2022.

104. The 2022 Loan was then again assigned by Ready Capital Mortgagor Depositor VII, LLC to Ready Capital Mortgage Financing 2002-FL9, LLC, a Delaware limited liability company, effective June 30, 2022.

105. The 2022 Loan was refinanced and paid in full by the 2024 Loan described below.

106. The cash investors in the project, including Plaintiff Premier Atlanta, are referred to as "Investor Members" in the RMG Austell Holdings Operating Agreement.

107. Eighty percent (80%) of the membership interests of RMG Austell Holdings were set aside for Investor Members making cash investments.

108. The remaining 20% was set aside for a sponsor promote, with RMG Austell Manager being the initial Sponsor Member entitled to such promote.

109. The RMG Austell Holdings Operating Agreement reflects the pooling of the cash investments made by Premier Atlanta and the other Investor Members for the business of RMG Austell.

110. Premier Atlanta provided over 90% of the cash equity capital for the project.

111. There are two iterations of such initial cash equity capital.

112. Exhibit A to the RMG Austell Holdings Operating Agreement identifies total cash equity investment of $22,725,000, of which Premier Atlanta funded $21,525,000.

113. Premier Atlanta's $21,525,000 investment represented 94.7195% of all cash equity investments and 75.7756% of all membership interests.

114. On July 28, 2022, Defendants RMG Austell Holdings and RMG Austell Manager signed an "Amendment to Capital Contribution and Membership Interest Percentage" document, which describes a $1 million increase in the total cash equity investment, from $22,725,000 to $23,725,000.

115. The one million dollar additional cash investment was to be funded by Defendant RUME CIGF I LP.

116. Pursuant to the amendment, the additional one million dollar cash equity investment dilutes only the Investor Members' interests in RMG Austell Holdings; the 20% sponsor promote is not adjusted or affected.

117. Under the amendment, Premier Atlanta's $21,525,000 investment represents 90.7271% (as opposed to 94.7195%) of all cash equity investments and 72.5817% (as opposed to 75.7756%) of all membership interests.

118. None of the Investor Members signed the amendment document.

119. RMG Austell Holdings' compensation for manager and sponsor services was not limited to the sponsor promote.

120. The Fee Agreement entitles RMG Austell Manager to different fees for different services.

121. RMG Austell Manager was entitled to a one-time $1,080,000 "Acquisition Fee", payable upon the closing of the acquisition of the Properties.

122. This Acquisition Fee was paid to RMG Austell Manager on or about the March 8, 2022 closing date for the acquisition of the Properties.

123. RMG Austell Manager was also entitled to fees for continuing asset management and consulting services, equal to one and one-half percent (1.5%) of the gross revenue of the Properties, payable in twelve (12) monthly installments prior to any distributions made by RMG Austell Holdings to its members, including Premier Atlanta.

124. The services to be performed by RMG Austell Manager under Sections 1 and 2 of the Fee Agreement are described as follows:

*"1. Appointment. The LLC hereby appoints the Sponsor to render services for the LLC, and confirms and ratifies the appointment of the Sponsor with respect to services rendered for the LLC to date, in supervising and overseeing the acquisition of the Interest by the LLC and the acquisition of the Properties by the Property Owners. Further, the Sponsor shall provide other asset management and consulting services for and on behalf of the LLC as requested from time to time by the LLC.*

*2. Authority. In conformity with the provisions of the Operating Agreement, the Sponsor shall have, and has had, the authority and the obligation to:*

*i. Obtain financing and equity needed by the Property Owners in an amount sufficient to fund the acquisition of the Properties by the Property Owners;*

*ii. Negotiate and assist in the planning and structure of the acquisition of the Properties by the Property Owners and the structure of the investment made by the Investor Members (as such term is defined in the Operating Agreement);*

*iii. Furnishing consultation and advice to the Property Owners and the LLC regarding the acquisition of the Properties and the Interest; and*

*iv. Identifying the Properties as appropriate for acquisition and negotiating the terms of its acquisition."*

125. Josh Mondry, individually and on behalf of RMG Austell Holdings and RMG Austell Manager, assured Premier Atlanta that the investigations and due diligence performed with respect to the Properties was extensive and comprehensive.

126. Josh Mondry, individually and on behalf of RMG Austell Holdings and RMG Austell Manager, also promised Premier Atlanta that the Project Business Model could be executed expeditiously and profitably in accordance with pro forma projections prepared by Defendants.

127. These assurances were provided on multiple occasions prior to, and after, the March 8, 2022 investment closing.

128. Premier Atlanta relied on these assurances in making its investment and throughout subsequent communications with Defendants during 2022 through early 2025.

129. In early 2025, Premier Atlanta became suspicious that the Defendants did not conduct extensive and comprehensive due diligence with respect to the Properties.

130. Indeed, Defendants did not conduct any diligence with respect to the Properties at all.

131. Instead, Premier Atlanta learned that its $20 million+ dollar investment was procured through fraud so that the Defendants, and each of them, could extract hefty fees for essentially doing nothing.

132. Not an iota of due diligence, for which RMG Austell Manager had collected a $1,080,000 "Acquisition Fee," was ever done.

133. In truth, the Defendants did not conduct any reasonable and appropriate due diligence whatsoever as to the legal processes under local laws for the tenant eviction strategies necessary to implementation of the Project Business Model.

134. Defendants, and each of them, materially omitted to advise Premier Atlanta that the evictions required for the RMG Austell Business Model could not lawfully occur in the timely fashion required for the Project Business Model to succeed.

135. Defendants, and each of them, materially omitted to advise Premier Atlanta that no legal diligence on the viability of the Project Business Model was conducted.

136. Following such discovery, Premier Atlanta issued information and records requests to the Defendants by letters dated May 12, 2025 and August 19, 2025.

137. The Defendants have failed to produce any evidence that any diligence at all, much less any adequate or appropriate due diligence, was performed by the Defendants.

138. The RMG Austell Holdings Operating Agreement also provides that RUME Property Management, LLC ("RUME Property Management") is entitled to property management fees and construction management fees as outlined in the Property Management Agreement.

139. RMG Austell Holdings' unaudited financial statements from 2022 through mid-year 2024, indicate payment of related party "Management Fee Expense" exceeding half a million dollars.

140. The financial statements show management fee expense of $129,088.36 for 2022 (of which $60,129.58 pertains to the Premier Property and $68,958.78 pertains to the Riverside Property).

141. The financial statements show management fee expense of $174,702.08, for 2023 (of which $82,360.16 pertains to the Premier Property and $92,341.92 pertains to the Riverside Property).

142. The financial statements show management fee expense of $190,786.93, for 2024 (of which $97,833.03 pertains to the Premier Property and $92,953.90 pertains to the Riverside Property).

143. The financial statements show management fee expense of $40,351.61, for the first two quarters of 2024 (of which $37,951.61 pertains to the Premier Property and $40,351.61 pertains to the Riverside Property).

144. Defendants MIR JAN and M Group, together with principals of RMG Austell Manager and certain of its affiliates, are collectively referred to in the RMG Austell Holdings Operating Agreement as the “Mondry Directing Party.”

145. Certain actions of the Mondry Directing Party with respect to the Property Management Agreement fall within the “Major Decisions” section of the RMG Austell Holdings Operating Agreement.

146. All “Major Decisions” require special approval of Plaintiff Premier Atlanta as the Investor Member holding a “Majority Interest.”

147. The Amended Side Letter provides Premier Atlanta with various rights and investor protections.

148. Premier Atlanta has the right to ensure the sponsor promote is available to compensate the appointed Manager of RMG Austell Holdings, if RMG Austell Manager ceases to be the Manager of RMG Austell Holdings for any reason.

149. Premier Atlanta has the right to remove RMG Austell Manager from its position as the Manager of RMG Austell Holdings for either (i) cause-related events or (ii) if Premier Atlanta exercises its buyout rights provided for in the Amended Side Letter.

150. The Property Management Agreement may not be terminated by the Mondry Directing Party without the consent of Premier Atlanta.

151. Any and all intercompany loans made to RMG Austell Holdings pursuant to Section 2.3 of the RMG Austell Holdings Operating Agreement may not be repaid to RMG Austell Manager unless the Investor Members of RMG Austell Holdings have been paid current on their Investor Member preferred return.

152. RMG Austell Manager is required to disgorge the acquisition fees paid to it under Section 4.12 of the Operating Agreement if and to the extent the Investor Member Preferred Return is not paid in full to the Investor Members upon a sale of the Properties.

153. Under the terms of the Amended Side Letter, Premier Atlanta holds modified buy-sell rights in its favor, replacing the Buy/Sell provisions in the RMG Austell Holdings Operating Agreement.

154. The 2022 Loan was refinanced and paid in full on or about August 9, 2024 from a second loan issued by ReadyCap Commercial in the maximum principal amount of $70,600,000 (the "2024 Loan").

155. Proceeds of the 2024 Loan in the amount of $37,290,000 were allocated to the Premier Property and $33,310,000 was allocated to the Riverside Property.

156. Premier Property Owner and Riverside Property Owner are co-borrowers on the 2024 Loan, and it is secured by both Properties.

157. Defendants Carl Schirtzinger, Nate Reichard, Ira Mondry and Mitch Mondry are personal guarantors.

158. The 2024 Loan has a maturity date of February 10, 2026, with certain extension rights to August 10, 2026 and subsequently to February 10, 2027 as set forth in the loan documents.

159. The 2024 Loan and associated loan documents, including the 2024 Loan Security Documents, were subsequently assigned by ReadyCap Commercial to Sutherland Asset I-CS, LLC ("Sutherland").

160. Effective June 30, 2025, lender Sutherland approved a $4.5 million increase in the 2024 Loan amount, from $70,600,000 to $75,100,000, of which $39,667,820 is allocated to the Premier Property and $35,432,180 is allocated to the Riverside Property.

161. The $4.5 million loan increase is memorialized by an Agreement and Omnibus Amendment to Loan Documents, dated August 11, 2025 and effective June 30, 2025, by and among the Property Owners, as Borrowers, each of Carl Schirtzinger, Nate Reichard, Ira Mondry, and Mitch Mondry, as Guarantors, and Sutherland, as Lender (the "June 2025 Loan Amendment").

162. The June 2025 Amendment references loan defaults by Premier Property Owner and Riverside Property Owner (the "Property Owners") with respect to the 2024

Loan and includes a forbearance arrangement and certain amendments to the 2024 Loan and associated loan documents.

163. By letter dated May 12, 2025, Premier Atlanta notified Defendants of Premier Atlanta's concerns that Defendants have been unable or unwilling to implement the Project Business Model in a timely fashion.

164. At present, the entire investment amount contributed by the Investor Members (including Premier Atlanta) is likely to be lost.

165. Although Josh Mondry specifically advised Premier Atlanta that the Project Business Model would work because the evictions and remodeling could happen quickly, Josh Mondry's assurances are and were false.

166. The promises and assurances Defendants made to Premier Atlanta are and were materially false and misleading because the eviction law prevented quick evictions and the remodeling was delayed by a lengthy eviction process that Defendants misrepresented.

167. The claim that extensive diligence was performed was materially misleading and false because no diligence concerning the eviction process was performed.

168. Defendants did not do any diligence on the eviction process prior to taking Premier Atlanta's money.

169. Due to the false statements and material omissions of the Defendants, Premier Atlanta has suffered damages in an amount no less than the amount of cash contributed to the Project.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Violation of Section 10(b) of the Exchange Act**
**(Against All Defendants)**

170. Plaintiff Premier Atlanta incorporates all foregoing allegations as though set fully herein.

171. Defendants made a core false and misleading statement and misleading omissions to induce Premier Atlanta to invest.

172. The misstatements generally concern assurances that extensive due diligence had been done that showed the viability of the Project Business Model.

173. The omissions generally involve failures to disclose legal impediments, specifically eviction laws and the length of the eviction process, that prevent the Project Business Model from performing as promised.

174. The statements and omissions were false and misleading because the Properties could not be remodeled in a timely fashion because the evictions that were an essential part of the Project Business Model could not occur without lengthy legal processes given legal protections to tenants that were not disclosed before Premier Atlanta provided over $20,000,000.00.

175. The statements in the Fee Agreement were false and misleading because no diligence was performed regarding the eviction process in connection with the purchase of either Property making the purchase of both Properties inappropriate and flatly inconsistent with the Project Business Model.

176. On May 28, 2025, RMG Austell Manager falsely advised Premier Atlanta that RMG Austell Manager conducted a good faith, comprehensive investigation and due diligence of the Properties." The statement is false because RMG Austell Manager did not conduct any investigation or due diligence of the Properties or of the eviction laws related to the Properties.

177. On May 28, 2025, RMG Austell Manager correctly reported that "the performance of the Properties has not met financial projections," and falsely advised Premier Atlanta that the reason for the poor financial performance is "market conditions in Austell, Georgia."

178. In truth, the reason for the poor financial performance is the failure of the Project Business Model under readily available eviction laws that were omitted from the representations that led Premier Atlanta to invest in the Project.

179. Defendants knew when they advanced the viability of the Project Business Model to induce Premier Atlanta to invest more than $20,000,000 that no appropriate diligence had been done and knew or should have known that the Project Business Model was not viable given the inability of the Defendants to evict tenants quickly, an essential prerequisite to the projections used to induce Premier Atlanta to invest.

180. The statutory safe harbor or bespeaks caution doctrine is not applicable to the false and misleading statements and omissions because the Project Business Model depended upon the existence of a speedy eviction process that was legally untenable from the outset.

181. The Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact; (c) omitted to state material facts in order to make their statements not misleading; and/or (d) engaged in acts, practices and a course of business that operated as a fraud and deceit upon Premier Atlanta.

182. The Defendants individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous practice and course of conduct that operated as a fraud and deceit upon Premier Atlanta.

183. The Defendants intended to and did deceive the investing public, including Premier Atlanta, regarding the viability of the Project Business Model and regarding the performance of due diligence that was not in fact ever performed.

184. Premier Atlanta has suffered damages in that, in direct reliance on the false assurances made to them regarding the viability of the Project Business Model, Plaintiff invested in the Project. Premier Atlanta would not have invested more than $20 million dollars in the Project had Premier Atlanta been advised truthfully that the Project Business Model was not viable.

185. As a direct and proximate result of Defendants' wrongful conduct, Premier Atlanta suffered damages attributable to the material misstatements and omissions alleged herein in connection with their investment in the Project.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Violation of Section 20(a) of the Exchange Act**
**(Against Officer and Manager Defendants)**

186. Plaintiff Premier Atlanta incorporates all foregoing allegations as though set fully herein.

187. This count is asserted by Premier Atlanta against the Officer and Manager Defendants for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

188. The Officer and Manager Defendants acted as controlling persons of RMG Austell Holdings and RMG Austell Manager within the meaning of Section 20(a) of the Exchange Act.

189. By reason of their high-level positions of control and authority as the senior officers and managers of RMG Austell Holdings and RMG Austell Manager, the Officer and Manager Defendants had the authority to influence and control, and did influence and control, the decision-making and the activities of the entity Defendants and caused RMG Austell Holdings and RMG Austell Manager to engage in the wrongful conduct complained of herein.

190. Mr. Josh Mondry in particular spoke to investors on behalf of RMG Austell Holdings and caused the dissemination of the materially false or misleading statements and omissions of material facts as alleged herein.

191. By virtue of their positions as controlling persons and as a result of their own conduct, the Officer and Manager Defendants are liable pursuant to Section 20(a) of the Exchange Act, jointly and severally, and to the same extent, as the entity Defendants

are liable under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, to Premier Atlanta.

192. Premier Atlanta suffered damages as the direct and proximate result of the conduct of the Officer Defendants.

**THIRD CLAIM FOR RELIEF**
**Securities Fraud – Material Misrepresentations and Omissions**
**C.R.S. § 11-51-501(1)(b)**
**(Against All Defendants)**

193. Plaintiff Premier Atlanta incorporates all foregoing allegations as though set fully herein.

194. In connection with the offer, sale or purchase of securities in Colorado, Defendants directly or indirectly made written and oral untrue statements of material fact and/or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of C.R.S. § 11-51-501(1)(b).

195. Premier Atlanta sustained damages as a result of Defendants conduct in violation of C.R.S. § 11-51-501(1)(b).

196. Premier Atlanta is entitled to an award of damages, interest, costs and attorney's fees, disgorgement and other equitable relief.

**FOURTH CLAIM FOR RELIEF**
**Fraud – Material Misrepresentations and Omissions**
**(Against All Defendants)**

197. Plaintiff Premier Atlanta incorporates all foregoing allegations as though set fully herein.

198. Defendants directly or indirectly made written and oral untrue statements of material fact and/or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

199. Premier Atlanta sustained damages as a result of Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Premier Atlanta requests that the Court enter judgment in its favor and against Defendants and grants the following relief:

1. Awarding Plaintiff its damages and other remedies available under law in an amount to be proven at trial;

2. Awarding Plaintiff its reasonable costs and expenses incurred in this action, including attorney's fees;

3. Awarding Plaintiff pre-judgment and post-judgment interest on all such amounts at the maximum rate allowed by law;

4. Awarding Plaintiff any and all such other and further relief that the Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff Premier Atlanta demands a jury on all issues so triable.

Respectfully submitted this 27th day of February 2026.

*/s/ Tracy L. Ashmore*
Tracy L. Ashmore
Robinson Waters & O'Dorisio, P.C.
1099 18th Street, Suite 2600
Denver, Colorado 80202
Office: (303) 297-2600

Facsimile: (303) 297-2750
Email: tashmore@rwolaw.com
*Attorney for Premier Atlanta LLC*